IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 4:06-CR-00295 |
| | : | |
| v. | : | (Judge McClure) |
| | : | |
| MARK DENSBERGER, | : | |
| | : | |
| Defendant. | : | |

**M E M O R A N D U M**

December 15, 2006

**BACKGROUND:**

On September 1, 2006, the government filed a one-count information charging Mark Densberger with sexual exploitation of his three sons, in violation of 18 U.S.C. § 2251(b). Contemporaneously with the filing of the information, Densberger agreed to enter a conditional guilty plea under Federal Rule of Criminal Procedure 11(a)(2), maintaining his right to challenge the statute's constitutionality.

On October 3, 2006, Densberger waived indictment and entered a conditional guilty plea. The same day Densberger filed a motion to dismiss, arguing that 18 U.S.C. § 2251 is an invalid exercise of congressional power under the Commerce Clause, both facially and as applied in this case. On November 1, 2006, Densberger filed his brief in support of this motion. Opposing and reply

briefs have been filed. Now, for the following reasons, we will deny Densberger's motion.

**STATEMENT OF FACTS:**

The facts of this case are relatively simple and not in dispute. In May of 2004, defendant was charged with the rape of one of his three adopted sons. At that same time, a search warrant was executed on defendant's home in Milton, Pennsylvania. The result of the search was the seizure of several videotapes that depicted defendant and his three adopted sons in sexually explicit contact. Thereafter, he was charged in Pennsylvania state court with one count of possession of child pornography and three counts of incest, in addition to the original rape charge. On November 16, 2004, defendant entered a plea of no contest to the three counts of incest. On August 9, 2005, defendant was sentenced to three to nine years. The remaining counts were <u>nolle prossed</u>.

At some point during the state proceedings the federal government joined in the investigation. On September 1, 2006, the United States filed a plea agreement and a one-count information charging defendant with sexual exploitation of children, in violation of 18 U.S.C. § 2251(b).

**DISCUSSION:**

The United States Constitution delegates to Congress the power "[t]o regulate Commerce . . . among the several States." Art. I, § 8, cl. 3. Now, it is necessary to review the relevant Supreme Court and Third Circuit cases which have interpreted this clause.

### I. Supreme Court Cases

In <u>Wickard v. Filburn</u>, 317 U.S. 111 (1942), the Supreme Court upheld the application of the Agricultural Adjustment Act of 1938, which regulated the production and consumption of wheat. The Court found that Congress could regulate a farmer who grew more wheat than his allotted quota, even though the excess wheat was grown solely for his own personal consumption. <u>Id.</u> at 128-29. The Court reasoned that a farmer growing wheat for personal use is commerce, because if he had not grown it for himself, he would have had to purchase it in commerce. <u>Id.</u> at 128-29. Furthermore, despite the fact that the amount this particular farmer grew had a trivial effect on interstate commerce, when this instance is aggregated with other farmers similarly situated, a substantial economic effect on interstate commerce is created. <u>Id.</u> at 127-28.

In <u>United States v. Lopez</u>, 514 U.S. 549 (1995), the Supreme Court struck down the Gun Free School Zones Act, which made it a federal crime for an

individual to knowingly possess a firearm within a school zone.  In doing so, the Court explained that Congress has the authority to regulate three categories of activity: 1) use of channels of interstate commerce; 2) instrumentalities of interstate commerce; and 3) activities that substantially affect interstate commerce.  Id. at 558-59.  In striking down the statute, the Court reasoned that unlike the homegrown wheat in Wickard, gun possession was not an economic activity.  Id. at 561.  Furthermore, the Court rejected the argument that guns in school zones damage the educational environment, which in turn damages productivity, finding this connection to interstate commerce far too attenuated.  Id.

     Similarly, in United States v. Morrison, 529 U.S. 598 (2000), the Supreme Court struck down a provision in the Violence Against Women Act which created a civil remedy against a person who commits a crime of violence motivated by gender.  In doing so, the Court noted four questions that should be raised when deciding Congress' power under the Commerce Clause: 1) Is the prohibited activity commercial or economic in nature?; 2) Is there an express jurisdictional element involving interstate activity which might limit the statute's reach?; 3) Did Congress make findings about the effects of the prohibited conduct on interstate commerce?; and 4) Is the link between the prohibited activity and the effect on interstate commerce attenuated?  Id. at 1750-51.  First, the court noted that gender-

motivated violence was not economic and that the statute contained no jurisdictional element. Id. at 1751. Yet, unlike the statute in Lopez, this statute contained congressional findings regarding the impact of gender-motivated violence on interstate commerce. Id. at 1752. However, the Court nevertheless struck down the statute, determining that the fact that Congress has found that an activity affects interstate commerce "does not necessarily make it so" and again found this connection too attenuated. Id.

Finally, in Gonzales v. Raich, 545 U.S. 1 (2005), the Court upheld the application of the Controlled Substances Act to the intrastate cultivation and use of homegrown marijuana for medicinal purposes. The Court found that marijuana, unlike the gun possession in Lopez and the gender-motivated violence in Morrison, is a popular part of commerce. Id. at 25-26. Furthermore, the Court reiterated that it need not determine whether the regulated activity substantially affects interstate commerce, but only whether Congress had a rational basis for so concluding. Id. at 22. The Court went on to state that prohibiting intrastate possession of an article of commerce is a rational and commonly used means of regulating commerce of that product. Id. at 26. Then, it applied Wickard to find that Congress could rationally conclude that homegrown marijuana that is never placed into commerce can have a substantial effect on interstate commerce when each trivial instance is aggregated.

Id. at 21-22.

## II.  Third Circuit Cases

After the Supreme Court decided Lopez, but before Morrison was decided, the Third Circuit decided United States v. Rodia, 194 F.3d 465 (3d Cir. 1999), cert. denied, 529 U.S. 1131 (2000).  In Rodia, the defendant was charged with possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B), which criminalized the possession of child pornography when the pornography has traveled in interstate commerce or when the materials from which the pornography was created traveled in interstate commerce.  Id. at 469.  In Rodia, the government alleged, and it was undisputed, that the film used to make the photographs was manufactured in another state and had thus traveled in interstate commerce.  Id.  The defendant relied on the Supreme Court's decision in Lopez, in arguing that the statute was unconstitutional.  Id.

In its ruling, the court noted that the fact that the statute contains a jurisdictional "hook" does not always ensure that the law only covers activity that has a substantial effect on interstate activity.  Sometimes, the hook's connection to activity actually regulated will be too attenuated.  Id. at 473.  The court found that this was such a case, in that relying on the fact that the film used to make the child pornography had traveled in interstate commerce was too attenuated to the activity

actually regulated, the possession of child pornography.  Id.

Nevertheless, the court upheld the statute.  The court found that Congress rationally could have believed that intrastate possession of pornography had a substantial effect on interstate commerce.  Id. at 477.  It reasoned that child pornographers who produce their own pornography for personal use will rarely be content with their own supply, thus turning to the interstate market to look for new material.  Id.  Therefore, intrastate possession of "homegrown" child pornography can stimulate demand for interstate child pornography.  Id.  Furthermore, discouraging intrastate possession of "homegrown" child pornography will cause some of these individuals to leave the realm of child pornography completely, thus reducing the demand for interstate child pornography.  Id.  Thus, the court summarized its ruling by stating that the demand side forces at work, taken in the aggregate, create the substantial effect on interstate commerce.  Id.

Although the Third Circuit's decision in Rodia came prior to the Supreme Court's decision in Morrison, the Third Circuit reaffirmed Rodia post-Morrison when it decided United States v. Galo, 239 F.3d 572 (3d Cir. 2001).  In Galo, the defendant was charged with violating 18 U.S.C. § 2251(a), which made it a crime to produce material depicting the sexual exploitation of children, in addition to 18 U.S.C. § 2252(a)(4)(B), the same statute upheld in Rodia.  Id. at 574.  The court

reaffirmed its ruling in Rodia that 18 U.S.C. § 2252 was constitutional. Id. Furthermore, it ruled that the reasoning in Rodia applies to the challenge to 18 U.S.C. § 2251(a), and found that statute constitutional as well. Id.

Finally, in United States v. Rybar, 103 F.3d 273 (3d Cir. 1996), the Third Circuit rejected a Commerce Clause challenge to 18 U.S.C. § 922(o), which made it unlawful to possess a machine gun. First, the court distinguished this statute from the one at in issue in Lopez, finding that this was a general ban on possession which was more likely to have a substantial effect on interstate commerce. Id. at 282. The ban in Lopez, on the other hand, only applied to guns in school zones, whose effect on interstate commerce the Supreme Court found to be insubstantial. Id. Then, the court found that Congress could have rationally concluded that machine gun possession, taken in the aggregate, substantially affects interstate commerce. Id. at 283. The court made this finding by concluding that such intrastate regulation may reduce the demand for machine guns, thus substantially affecting interstate commerce when taken in the aggregate. Id.; see also Rodia, 194 F.3d at 476 (discussing and relying on Rybar).

## II. The Present Case

Densberger argues that 18 U.S.C. § 2251(b) is unconstitutional both on its face and as applied in this case because it exceeds Congress' power under the

Commerce Clause.  18 U.S.C. § 2251(b) states that:

> Any parent, legal guardian, or person having custody or control of a minor who knowingly permits such minor to engage in, or to assist any other person to engage in, sexually explicit conduct for the purpose of producing any visual depiction of such conduct . . . if such parent, legal guardian, or person knows or has reason to know that such visual depiction will be transported in interstate or foreign commerce or mailed, <u>if that visual depiction was produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce by any means</u>, including by computer, or if such visual depiction has actually been transported in interstate or foreign commerce or mailed.  (emphasis added).

In the present case, the government does not argue that defendant knew or had reason to know that the videotapes would be transported or mailed in interstate or foreign commerce.  It also does not argue that the videotapes actually were transported or mailed in interstate or foreign commerce.  Instead, it relies on the fact that the videotapes themselves and the video camera were both manufactured outside of Pennsylvania, and thus they were shipped to Pennsylvania via interstate or foreign commerce.  Defendant does not dispute that this is true.

Defendant offers several arguments as to why the statute in question is both facially and as applied unconstitutional.  First, he relies on the Supreme Court's decisions in <u>Lopez</u> and <u>Morrison</u> and argues that the simple fact that the materials the defendant used came from outside of Pennsylvania is not a sufficient nexus to interstate commerce.  Second, he points to the Sixth Circuit's opinion in <u>United

9

States v. Corp, 236 F.3d 325 (6th Cir. 2001), and the Ninth Circuit's opinion in United States v. McCoy, 323 F.3d 1114 (9th Cir. 2003) each of which ruled that 18 U.S.C. § 2252(a)(4)(B) was unconstitutional as applied to each respective defendant.  Third, he argues that the Third Circuit's decisions in Rodia and Galo are not binding on this court because those cases involved § 2251(a) and § 2252(a)(4)(B) and not § 2251(b), and also that Rodia and Galo were wrongly decided.  Finally, he argues that § 2251(b) regulates domestic relations by focusing on parents and guardians, and that this is an area of regulation especially reserved for the states.

First, we note that the Third Circuit's decision in Rodia found that the jurisdictional "hook" allowing for regulation when the materials used to produce the child pornography were produced in interstate commerce was not in itself enough to render the statute constitutional.  194 F.3d at 473.  Thus, in this case, the fact that the videotapes and video camera used to produce the child pornography were manufactured outside of Pennsylvania is not enough to show a substantial effect on interstate commerce.  The critical question in this case is whether Congress had a rational basis for concluding that intrastate possession of child pornography substantially affects interstate commerce.  Raich, 545 U.S. at 22.

We reject the defendant's first argument that Lopez and Morrison require

this statute to be found unconstitutional. Just as the respondents did in <u>Raich</u>, defendant reads these cases far too broadly while forgetting that each of these cases preserved much of the modern Commerce Clause jurisprudence. <u>See</u> <u>Raich</u>, 545 U.S. at 23. <u>Lopez</u> and <u>Morrison</u> involved gun possession in school zones and gender-motivated violence, respectively, and the Court found neither was economic in any sense of the word. This case involves child pornography, a popular part of commerce. Indeed, the <u>Rodia</u> court noted that Congress investigated and found that child pornography was an organized, multimillion dollar industry. <u>Rodia</u>, 194 F.3d at 475. Therefore, this case more closely resembles <u>Wickard</u> and <u>Raich</u>. Like the wheat in <u>Wickard</u> and the marijuana in <u>Raich</u>, the child pornography in this case was produced in defendant's own home for personal use and was never intended to enter into commerce. Nevertheless, as the Court stated in <u>Raich</u>, prohibiting intrastate possession of an article of commerce is a rational means of regulating interstate commerce of that product. <u>Raich</u>, 545 U.S. at 26.

   As already stated, we need not determine whether the regulated activity substantially affects interstate commerce, but only whether Congress had a rational basis for so concluding. <u>Id.</u> at 22. In <u>Rodia,</u> the Third Circuit found that Congress could have rationally reasoned that possession of home grown child pornography

11

may well stimulate a further interest in child pornography, eventually creating a demand for interstate child pornography. 194 F.3d at 477. The court also stated that discouraging the intrastate possession of pornography will cause some of these child pornographers to leave the realm of child pornography completely, which will reduce the interstate demand. Id. Finally, as the Third Circuit made clear in Rodia and Rybar and the Supreme Court stated in Raich, regulating intrastate possession of an article of commerce can curb the nationwide demand for article, thus substantially affecting interstate commerce. Raich, 545 U.S. at 26; Rodia, 194 F.3d at 465; Rybar, 103 F.3d at 283. Thus, it is clear that Congress has rationally concluded that possession of "homegrown" child pornography, taken in the aggregate, substantially affects interstate commerce.

Furthermore, we reject defendant's reliance on the Sixth Circuit's decision in Corp and the Ninth Circuit's decision in McCoy. Those cases found that "homegrown" child pornography created for personal use cannot be regulated by Congress. The Third Circuit, however, has decided that this type of activity can be reached by Congress. The fact that Rodia and Galo involved § 2251(a) and § 2252(a)(4)(B) and this case involves § 2251(b) is irrelevant. First, we are confused as to how defendant relies on cases from other circuits involving § 2252(a)(4)(B), but then argues that the Third Circuit's ruling on the constitutionality of §

12


2252(a)(4)(B) is not actually binding because it is a different statute.  It appears that the defendant wants to have his cake and eat it too.  The reasoning of the Third Circuit is equally applicable to this case and we are thus bound.  <u>Rodia</u> and <u>Galo</u> both involved "homegrown" child pornography produced purely for personal use, which is exactly the same situation as this case.  The only reason that § 2251(b) is being utilized in the instant case is because the defendant was the parent of the subject matter of the child pornography.  With respect to defendant's argument that <u>Rodia</u> and <u>Galo</u> were wrongly decided because they did not correctly apply the four factor test from <u>Morrison</u>, this argument is easily rejected.  Even if we could be persuaded that these cases were wrongly decided, they are controlling upon this court and must be followed.

   Finally, defendant argues § 2251(b) regulates domestic relations by focusing on parents and guardians, and this is an area of regulation that is especially reserved for the states.  As the government correctly points out, it would make no sense to allow Congress to regulate child pornography produced for personal use when the victim was unrelated to the defendant, but not allow Congressional regulation when the victim was the defendant's relative.  Indeed,  the effect on interstate commerce remains, despite the fact that the victim is related to the defendant.  Therefore, this argument must also be rejected.

**CONCLUSION:**

Based on the Supreme Court's decisions in <u>Wickard</u> and <u>Raich</u>, as well as the Third Circuit's decisions in <u>Rodia</u> and <u>Galo</u>, and for all the reasons discussed above, we will deny defendant's motion to dismiss and find that 18 U.S.C. § 2251(b) is constitutional both facially and as applied to the defendant.

    s/ James F. McClure, Jr.
James F. McClure, Jr.
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 4:06-CR-00295 |
| | : | |
| v. | : | (Judge McClure) |
| | : | |
| MARK DENSBERGER, | : | |
| | : | |
| Defendant. | : | |

**O R D E R**

December 15, 2006

For the reasons set forth in the accompanying memorandum, IT IS ORDERED THAT:

1. Defendant's motion to dismiss is DENIED. (Rec. Doc. No. 9-1).

2. Sentencing is set for January 26, 2007 at 2:00 p.m. in Courtroom No. 3, Third Floor, Federal Building, 240 West third Street, Williamsport, Pennsylvania.

    s/ James F. McClure, Jr.
James F. McClure, Jr.
United States District Judge