IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 4:06-CR-00295 |
| | : | |
| v. | : | (Judge McClure) |
| | : | |
| MARK DENSBERGER, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**

April 11, 2007

Before the court are defendant's objections to the United States Probation Office's presentence report and arguments concerning application of 18 U.S.C. § 3553(a) sentencing factors. Defendant pled guilty to a one-count information that charged him with sexual exploitation of several children, including his three adopted sons. In its presentence report, the probation office added several enhancements to defendant's offense level, while refusing to apply an offense level reduction for defendant's acceptance of responsibility. Defendant objects to these calculations. We held a sentencing hearing and gave defendant an opportunity to argue his objections and put on evidence. In addition, defendant argued that the 18 U.S.C. § 3553(a) sentencing factors warranted imposition of only the statutory minimum sentence of ten years. For the following reasons, we will overrule defendant's objections and adopt the probation office's presentence report in full.

1

We will also reject defendant's request for the ten-year statutory minimum sentence.

## BACKGROUND:

### I.  Factual and Procedural History

Starting in 1995, the defendant adopted three sons through Eckles Adoption Agency, Williamsport, Pennsylvania.  He adopted then nine-year-old Mark Densberger, Jr. on July 5, 1995, then thirteen-year-old Bryan Densberger on July 12, 1996, and then twelve-year-old Bruce Densberger on September 16, 1999. They resided in a duplex in Milton, Pennsylvania, which also included a detached garage converted into a martial arts studio.  Up until 2002, defendant was employed by the Federal Bureau of Prisons, first as a corrections officer, and later as a teacher.

In May 2004, after receiving a statement from Bryan Densberger, Pennsylvania state officials charged defendant with rape and executed a search warrant for defendant's home.[1]  Officials found several videotapes, nine of which depicted defendant engaged in sexual activity with his three adopted sons.  In addition, authorities found videotapes depicting the sons engaged in sexual activity

---

[1] According to the probation office's response to defendant's objections, the Federal Bureau of Investigations ("FBI") obtained a search warrant for defendant's premises on May 27, 2004.

with minor females.  These videotapes were found with the other videotapes.

Based on these findings, Pennsylvania added charges of child pornography and

three counts of incest.  Defendant pled no contest to the three counts of incest, the

prosecution nolle prossed the remaining counts, and defendant was sentenced to

three to nine years of imprisonment on August 9, 2005.

On September 1, 2006, the United States Government filed a one-count

information charging defendant with unlawfully and knowingly permitting his

three sons to engage in sexually explicit conduct for the purpose of producing

visual depictions of such conduct, in violation of 18 U.S.C. § 2251(b).  On the

same day, defendant filed a conditional guilty plea agreement, which he had signed

on November 8, 2004.  On October 3, 2006, defendant waived indictment, entered

his conditional guilty plea, and filed a motion to dismiss challenging the

constitutionality of 18 U.S.C. § 2251, both facially and as applied to this case.  On

December 15, 2006, we denied defendant's motion to dismiss.

The probation office issued its presentence report and determined

defendant's advisory sentencing range under the 2002 United States Sentencing

Commission Guidelines Manual.  Defendant has objected to the presentence report

on several grounds.  On March 28, 2007, the court held a sentencing hearing giving

the parties an opportunity to argue defendant's objections, put on evidence and

testimony, and also gave the parties an opportunity to make arguments concerning the sentencing factors the court must consider under 18 U.S.C. § 3553.  The Court also received defendant's allocution at that time.  These issues are now ripe for our disposition.

**DISCUSSION:**

## I.  Standard for Sentencing

To determine defendant's ultimate sentence, the court must consider the United States Sentencing Guidelines.  The Supreme Court made such guidelines advisory in United States v. Booker, 543 U.S. 220 (2005).  Post-Booker, the Third Circuit has directed the district courts to follow a three-part process when applying these advisory guidelines:

(1) Courts must calculate defendant's Guidelines sentence in the same manner as they would have before Booker.

(2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre-Booker case law, which continues to have advisory force.

(3) Finally, they are to exercise their discretion by considering the relevant 18 U.S.C. § 3553(a) factors in setting the sentence they impose regardless

whether it varies from the sentence calculated under the Guidelines.

United States v. Jackson, 467 F.3d 834, 837 (3d Cir. 2006) (quotation marks,

brackets, and citations omitted) (quoting United States v. Gunter, 462 F.3d 237,

247 (3d Cir. 2006)).

Accordingly, we will follow this procedure by first reviewing the guideline

sentence calculation made by the probation office in its presentence report,

consider the merits of defendant's objections to the probation office's guideline

sentence calculation, and finally consider the sentencing factors enunciated under

18 U.S.C. § 3553(a).[2]  When considering objections to the presentence report, we

note that the party challenging the presentence report "has the burden of

production . . . to come forward with evidence that tends to indicate that the report

is incorrect or incomplete."  United States v. McDowell, 888 F.2d 285, 290 n. 1

(3d Cir. 1989).  Of course, the ultimate burden of persuasion rests with the party

seeking an adjusted sentence, which in this matter means the government when

considering offense level enhancements, and the defendant when considering

offense level reductions.  Id. at 291.  When considering evidence, we will apply the

preponderance of evidence standard, as required.  United States v. Cooper, 437

F.3d 324, 330 (3d Cir. 2006).

---

[2] Defendant has not made any departure requests.

5

## II.  Presentence Report

The probation office identified six minors as being sexually exploited by defendant - defendant's three sons, Bryan, Mark, and Bruce, and the three minor females depicted in some of the videos having sex with the sons.  Pursuant to U.S.S.G. § 2G2.1(c)(1), the probation office considered each minor exploited as a separate group and calculated the offense level attributable to the defendant for each minor.

For defendant's sexual exploitation of Bryan, the probation office determined a base offense level of twenty-seven pursuant to U.S.S.G. § 2G2.1(a).  Based on statements from Bryan which indicated defendant began sexually assaulting the minor when he was thirteen, the probation office determined that U.S.S.G. § 2G2.1(b)(1)(B) required a two-level increase to defendant's base offense level.  Because defendant was Bryan's parent at the time of the arrest, the probation office increased defendant's offense level another two levels pursuant to U.S.S.G. § 2G2.1(b)(2).  The probation office also determined that another two-level increase was warranted under U.S.S.G. § 3A1.1(b)(1) because defendant knew or should have known that Bryan, who had a troubled past, was a vulnerable victim.  Finally, the probation office added another two levels for attempting to obstruct justice because it determined defendant attempted to flee the country

while being investigated by the federal government for the instant offense.  After adding the enhancements to the base offense level, the probation office calculated an adjusted offense level of thirty-five for defendant's sexual exploitation of Bryan.

The probation office applied the same enhancements and made the same calculations for defendant's sexual exploitation of Mark Jr. and Bruce, except the probation office added an additional two offense levels for the exploitation of Mark Jr. because he was under the age of twelve when first sexually assaulted and videotaped by defendant.  As a result, the probation office calculated an adjusted offense level of thirty-seven for the group concerning Mark Jr., and thirty-five for the group concerning Bruce.  For two of the minor females, the probation office calculated an adjusted offense level of thirty-one - twenty-seven for the base offense level, with an additional two levels due to the age of the minor females and two levels for the defendant's attempted obstruction of justice.  For the third minor female, the defendant's adjusted offense level was twenty-nine - twenty-seven for the base offense level and a two-level enhancement for defendant's attempted obstruction of justice.

Pursuant to U.S.S.G.  § 3D1.4, the probation office took the highest adjusted offense level from the group - thirty-seven - and added four levels for a combined

adjusted offense level of forty-one.[3]  The probation office found that although

defendant pled guilty, defendant did not warrant an adjustment for acceptance of

responsibility, and concluded forty-one to be defendant's total offense level.  With

a criminal history category score of I, defendant's sentencing guideline range is

324-405 months.  Because the statutory maximum for his offense, however, is

twenty years, the probation office stated the advisory guideline sentence as 240

months imprisonment.  In accordance with U.S.S.G.  § 5G1.3(b), the probation

office also recommended the sentence to run concurrently with defendant's state

sentence of three to nine years.  The final advisory guideline sentence is 206

months.

### III.  Defendant's Objections

Defendant filed several objections to the presentence report.[4]  Essentially,

defendant challenges each enhancement applied to the offense levels attributable to

his sexual exploitation of his three sons.  This includes the enhancement for the

victim's age, defendant's role as a parent, the vulnerable victim enhancement, and

---

[3] The four points were added to account for the other groups in accordance
with U.S.S.G. § 3D1.4.

[4] Although defendant makes a multitude of objection to the presentence
report, we will only consider those that directly affect the calculations of
defendant's sentencing guideline range.

the attempted obstruction of justice enhancement.  In addition, defendant argues

that the videotaped sex with the three minor females should not be attributable to

him because there is no evidence that he played any role in their sexual

exploitation.  Finally, he argues that he warrants a three-level decrease for

accepting responsibility.  According to defendant, his total offense level should be

twenty-seven, which would result in a guideline imprisonment range of 70 to 87

months.  Because the statutory minimum for this offense is ten years, defendant

recommends we impose the statutory minimum.  We will consider each argument

in turn.

Before doing so, we must first dispense with a general objection made by

defendant.  Throughout defendant's written objections and during the sentencing

hearing, defendant has generally objected to the presentence report's reliance on

hearsay, and has suggested that a court cannot rely on hearsay for sentencing

purposes.  We reject this argument, as it is clear that in the Third Circuit a

sentencing court may rely on hearsay, as long as such hearsay has a "sufficient

indicia of reliability."  United States v. Paulino, 996 F.2d 1541, 1547 (3d Cir.

1993) (quoting U.S.S.G. § 6A1.3(a)).

### A.  Victim's Age

In paragraphs 31 and 45 of the presentence report, the probation office added

two-level enhancements because Bryan and Bruce were each under the age of sixteen at the time the sexual assaults and videotaping began. <u>See</u> U.S.S.G. § 2G2.1(b)(1)(B). In paragraph 38, the probation office added a four-level enhancement for Mark Jr. because he was under the age of twelve when the sexual assaults and videotaping commenced. <u>See</u> U.S.S.G. § 2G2.1(b)(1)(A). The defendant objects to all of these enhancements, arguing that there is no reliable evidence that establishes the age of the victims at the time the sexual assaults began.[5]

We disagree. In paragraph 9, the probation office discusses in detail several videos depicting sexually explicit conduct between the boys and defendant. The date on one of the videos clearly indicates that Bruce and Mark Jr. were under the age of sixteen at the time. Bruce also met with the probation officer and told her that the defendant began abusing him shortly after he was adopted. (Presentence Rep. ¶ 9.) Bryan testified that the defendant sexually assaulted him shortly after he was adopted at the age of thirteen. (Obj. Hr'g Tr. 39:17-40:3, March 28, 2007.) Finally, Mark Jr., who was nine at the time defendant adopted him, sent the probation office an email that states that "[f]rom the day I went home with him I

---

[5] Although during the sentencing hearing defense counsel intimated a willingness to withdraw some of his age-related objections, we will nevertheless address all of his objections out of an abundance of caution.

was molested [sic] and abused mentally and physically." (Presentence Rep.

Attach.)  He notes that he was eleven when the defendant began videotaping the

sexually explicit conduct.  (Id.)  He also corroborates Bryan's testimony and states

that the defendant began sexually assaulting Bryan shortly after Bryan was

adopted.  (Id.)  This evidence and testimony establishes that Bryan and Bruce were

under the age of sixteen and Mark Jr. was under the age of twelve at the time the

sexual assaults and videotaping commenced.

Defendant's specific attacks on the reliability of this evidence is unfounded.

First, defendant claims that the dates on the video cameras were unreliable.

Defendant fails to offer, however, any evidence that would support this general

statement, nor can he point to evidence that refutes the date of the specific video

which establishes Bruce and Mark Jr. were fourteen at the time of the depicted

sexually explicit conduct.  Second, defendant generally challenges Bryan's

credibility, but cannot point to any specific discrepancies in Bryan's testimony that

would support defendant's claim.  Certainly, he has not offered any evidence to

refute Bryan's testimony that the defendant began sexually assaulting Bryan when

he was thirteen.  We note that Bryan's testimony is in fact corroborated by Mark

Jr.'s email to the probation officer.

Finally, defendant claims a prior letter from Mark Jr. to the state court judge

presiding over the state proceedings undermines Mark Jr.'s subsequent claim that defendant molested him prior to the age of twelve.  Although in the letter to the state judge Mark Jr. does state that "the police have very much exaggerated the charges against my father," nowhere in the letter does he directly or indirectly refute his claim that his father began sexually assaulting him immediately after adoption, or that his father began videotaping their sexually explicit conduct when he was eleven.  (Def. Obj. Exh. D.)  Nor has defendant offered any evidence to substantiate the claims made in Mark Jr.'s letter suggesting the police exaggerated the charges.  In contrast, the statement in Mark Jr.'s email claiming he was molested shortly after adoption is consistent with that of his brothers, who both indicated that they too were sexually abused by the defendant shortly after adoption.  Based on this evidence and testimony, we find by a preponderance of the evidence that defendant began sexually abusing and videotaping such abuse of Mark Jr. when the victim was under the age of twelve.

Therefore, we adopt fully the enhancements added in paragraphs 31, 38, and 45 of the presentence report.

### B.  Parental Role

In paragraphs 32, 39, and 46 of the presentence report, the probation office added a two-level enhancement to each group concerning defendant's sexual

exploitation of his sons because defendant was their parent during the offense.  See U.S.S.G.  § 2G2.1(b)(2).  Defendant argues that this amounted to impermissible double counting.  He reasons that because the statute he was charged under - 18 U.S.C. § 2251(b) - required he be the "parent, legal guardian, or person having custody or control of the minor" sexually exploited, the Sentencing Guidelines already took into account his role as parent when it assigned a base offense level of twenty-seven under U.S.S.G. § 2G2.1(a) for his violation of 18 U.S.C. § 2251(b). By adding a two-level enhancement under U.S.S.G.  § 2G2.1(b)(2) for defendant's role as a parent, the defendant argues the probation office committed an impermissible double counting.

The Third Circuit has recognized that the Sentencing Guidelines explicitly note when double counting is forbidden.  U.S. v. Wong, 3 F.3d 667, 670 (3d Cir. 1993).  "[O]nly when the Guidelines explicitly prohibit double counting will it be impermissible to raise a defendant's offense level under one provision when another offense Guideline already takes into account the same conduct."  Id. at 671.  Therefore, for defendant's argument to be successful, not only must we find that the Sentencing Guidelines fully took into account defendant's status as parent when assigning a base offense level to 18 U.S.C. § 2251(b), but we must also find an explicit prohibition in the guidelines for adding the parental enhancement in this

context.

Neither situation exists here.  First, the legislative scheme of U.S.S.G. § 2G2.1 clearly indicates that the base offense level assigned to crimes committed in violation of 18 U.S.C. § 2251(b) does not fully take into account defendant's status as parent.  After assigning a base offense level to violations of both 18 U.S.C. § 2251(a) and (b), U.S.S.G. § 2G2.1(b)(2) specifically provides the two-level enhancement for being a parent.  Certainly, if the base offense level was intended to fully take into account defendant's status as parent, then the same guideline section would not specifically provide for an enhancement for defendant's parental status.  This parent enhancement reflects the Sentencing Guidelines' interest in punishing those that abuse their position of trust with a child.  See United States v. Balfany, 965 F.2d 575, 585 (8th Cir. 1992) (interpreting U.S.S.G. § 2G2.1(b)(2)'s statutory predecessor).  Simply because section 2251(b) includes a parental/legal guardian requirement for charging purposes does not mean that by assigning section 2251(b) a base offense level the Guidelines are fully taking into account their interest in punishing those who abuse a child's trust.[6]  Only by adding the

---

[6] During the sentencing hearing, defendant also argued that because the Sentencing Guidelines assigned the same base offense level for charges levied under either 18 U.S.C. § 2251(a) or (b), the differences in the statutory language between those two sections made it irrational for the court to add a two-level enhancement to defendant for a charge levied under 18 U.S.C. § 2251(b).  We fail

14

two-level enhancement under U.S.S.G. § 2G2.1(b)(2) is this interest fully satisfied.

Second, the Guidelines do not explicitly prohibit a U.S.S.G. § 2G2.1(b)(2)

parental enhancement in this context.  This lack of an explicit prohibition further

supports our conclusion that defendant qualifies for a two-level enhancement for

his role as a parent.  Therefore, we adopt in full the enhancements added in

paragraphs 32, 39, and 46.

### *C.  Vulnerable Victim*

In paragraphs 33, 40, and 47 of the presentence report, the probation office

applied a two-level enhancement for defendant's sexual exploitation of each son

because each son was a vulnerable victim.  See U.S.S.G. § 3A1.1  Defendant

challenges this assessment, arguing that Bryan was physically stronger than him,

that Mark Jr. was not vulnerable because defendant ceased abusing him once Mark

Jr. informed defendant he was heterosexual, and that Bruce "knew his own mind

and had received sufficient development to assure that he was not vulnerable."

(Def. Obj. at 6.)

A vulnerable victim enhancement is warranted when the defendant knew or

---

to see how any difference between the language in those two statutory sections
means adding a two-level enhancement to defendant for being a parent amounts to
double counting.

should have known that the victim was "unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." U.S.S.G. § 3A1.1 cmt. n.2.

We agree with the findings of the presentence report and reject defendant's arguments. First, there is no question that these minors each had a troubled past that made them susceptible to defendant's criminal conduct. During the sentencing hearing, defendant's own expert witness in psychiatry, Dr. John Hume, testified that these boys came from a background in which "they had been severely abused, they had been moved about, they had had many agency interventions, [and] they certainly were not youngsters with normal background histories." (Obj. Hr'g Tr. 90:19-22.) In his opinion, such a background could make them possibly more vulnerable, and the need to be accepted would be certainly important for each boy. (Id. at 90:23, 25.) Bryan testified that an evaluation of him when he was six-years-old indicated that he had "gay sexual tendencies," and that it was the defendant who informed him of this evaluation. (Id. at 40:7-13.) The probation officer who issued the presentence report testified that during her investigation, Mark Jr. informed her that he was learning disabled, and Bruce informed her that prior to his adoption by the defendant he had been raped by an older brother and physically abused by a stepfather and foster family. (Id. at 161:10-163:25.) As

16

already discussed earlier, at the time they were adopted by defendant, Bryan was

thirteen, Mark Jr. nine, and Bruce twelve, and the sexual assaults began within

months of the adoption being finalized.  Clearly, each boy suffered from a troubled

past that made it especially important for him to be accepted by his adoptive

parent.  Their tender ages, their background and need for acceptance all combined

to make the three boys particularly susceptible to engaging in conduct that their

adoptive father - the defendant - would have pressed upon them, which in this case

included explicit sexual conduct.  In this context, it is hard to imagine victims more

vulnerable.

Second, it is also clear that defendant knew or should have known about

their vulnerability at the time of adoption.  The probation officer testified that an

official from the Eckel's Adoption Agency informed her that defendant read the

boy's profiles, met with social workers, foster parents, and the potential adoptees

prior to adoption.  (Id. at 162-165.)  Mr. Michael Dennehy, defendant's close

personal friend and sometime lawyer, confirmed that defendant knew the three

sons had a troubled background.  (Id. at 70:6-13.)  Based on this evidence and

testimony, we find that defendant knew these boys suffered from a troubled past

prior to adoption, and that he knew or should have known that such a troubled past

made these boys unusually susceptible to his criminal conduct.  For these reasons,

the presentence report's vulnerable victim enhancement is warranted.

Defendant's arguments suggesting otherwise are meritless. First, although Bryan may have become stronger than defendant as he got older, he clearly was not stronger at the time he was first sexually abused shortly after adoption. Even if he was physically stronger, this fact would have no bearing on whether Bryan's troubled past made him more susceptible to defendant's criminal conduct. Second, the fact defendant stopped abusing Mark Jr. after he informed the defendant he was heterosexual likewise is irrelevant. Finally, defendant's suggestion that Bruce engaged in this conduct with defendant under his free will is simply not supported by any testimony. Given Bruce's age and background at the time the sexual abuse started, defendant's suggestion is borderline ludicrous.

For these reasons, we will adopt in full the enhancement added in paragraphs 33, 40, and 47 of the presentence report.

### D. Minor Female Victims

The probation office included as groups in its presentence report the three minor females that were depicted in several videos having sexual contact with defendant's three sons. Defendant argues he should not be held responsible for the taping of the females because he was not involved in the taping. In support of this argument, he points to Mark Jr.'s letter in which the son states generally that the

defendant "didn't have anything to do with the tapes that were made involving the girls with me and my brothers." (Def. Obj. Exh. D.) Defendant also notes that he forced Bryan to sign a contract that stated he would not have sex with any female until he was old enough to get married. (Def. Obj. Exh. A.) Finally, Mr. Dennehy testified that the defendant told him he had nothing to do with the videotapes concerning the minor females. (Obj. Hr'g Tr. 113-114.)

We adopt the findings of the presentence report. Bryan testified at length concerning defendant's substantial involvement in the filming of the minor females. The filming occurred in defendant's martial arts studio with a video camera that was hidden behind a mirror. (Obj. Hr'g Tr. 95:19-25, 98:5-10.) According to Bryan, defendant challenged the sons to have sex with the minor females in the martial arts studio, defendant showed the sons how to set up the video camera behind the mirror, and defendant used the tapes as an "instructional video" for each son. (Id. at 95-99.) According to paragraph 7 of the presentence report, these videos were found with defendant's other sexually explicit videos at the time his house was searched. We find Bryan's testimony and the presentence report to be credible and sufficient to meet the preponderance of evidence standard, and find that defendant is responsible for the videos of the minor females. To the extent Mark Jr.'s statement in his letter and defendant's statements to Mr. Dennehy

contradict Bryan's testimony, we find them not credible.  We also find Bryan's contract with defendant regarding having sex before marriage to be irrelevant. Therefore, the groups concerning the minor females were properly calculated against defendant in the presentence report.

### E.  Obstruction of Justice

In paragraphs 35, 42, 49, 55, 61, and 67 of the presentence report, the probation office applied a two-level enhancement for defendant's attempt to obstruct justice because defendant attempted to flee to Canada after the federal investigation had started.  See U.S.S.G. § 3C1.1.  Defendant objects to this enhancement for two reasons.  First, defendant argues that his trip to Canada was not an attempt to flee but rather was a thwarted camping trip.  Second, defendant argues that his attempted trip to Canada had no effect on the federal investigation, and therefore under United States v. Jenkins, 275 F.3d 283 (3d Cir. 2001) he is not subject to an obstruction-of-justice enhancement.

U.S.S.G. § 3C1.1 subjects a defendant to an obstruction-of-justice enhancement if the following is met:

> (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, and

> (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense.

If facing both state and federal prosecutions, the defendant does not necessarily have to be aware of the federal investigation to qualify for an enhancement under U.S.S.G. § 3C1.1.  Jenkins, 275 F.3d at 287-88.  As long as the defendant's alleged obstruction of justice was intended to obstruct the state prosecution and a federal investigation had already began at the time of the obstructive conduct, then defendant may qualify for the enhancement.  Id. at 287-88.  Nevertheless, actual obstructions of justice of the state prosecution must have a nexus with the federal investigation.  Id. at 291.

First, we find that defendant's attempted trip to Canada qualifies as an attempt to obstruct the administration of justice of the state prosecution.  In doing so, we reject defendant's first argument that his attempted trip to Canada was a mere camping trip.  According to paragraph 26 of the presentence report, defendant posted bail while in state custody on June 28, 2004.  That same day, although he was not permitted to contact any of the alleged victims, he contacted his son Bruce and both headed for the Canadian border.  They traveled in two separate cars, and brought along with them $10,000 in cash.  Defendant was arrested at the border after Bruce's car was stopped.  Although Bruce testified that the two were merely planning to go camping and had in fact brought camping gear, he could not remember where they had planned to camp in Canada.  (Obj. Hr'g Tr. 151:17-21.)

He also testified that they had never camped in Canada before.  (Id. at 22-24.)

These facts are sufficient to support our finding that defendant's impromptu trip to

Canada with $10,000 in cash, which was commenced on the same day he was

released from jail, was a willful attempt to flee the country and avoid facing the

serious state criminal charges still pending against him.  We do not find Bruce's

testimony that the trip was a mere camping trip credible.

Second, we also find that the federal investigation against defendant had

commenced prior to defendant's attempt to obstruct the state court proceedings.

As argued by the probation office in its response to defendant's objections, the

federal investigation against defendant had commenced as of May 27, 2004 when

the FBI secured a search warrant for defendant's residence.  Defendant did not

attempt to flee to Canada until June 28, 2004, at least a month after the federal

investigation had began.  As the Third Circuit recognized in Jenkins, U.S.S.G. §

3C1.1's "willful" requirement does not require the defendant to be aware of the

federal investigation.  Because we find his trip to Canada was an intentional

attempt to thwart the state prosecution, the fact the federal investigations had

already started is sufficient to make defendant's attempted obstruction of the state

prosecution relevant to defendant's federal sentencing.

Before applying the U.S.S.G. § 3C1.1 obstruction-of-justice enhancement to

defendant, however, we must consider whether <u>Jenkins</u> requires we find defendant's attempted obstruction of justice had an effect on the federal proceedings.  In <u>Jenkins</u>, the Third Circuit reversed a trial court's application of a two-level enhancement for obstruction of justice because the Court found there was no evidence to suggest defendant's obstructive conduct had a nexus with the federal proceedings.  <u>Jenkins</u>, 275 F.3d at 291.  There, the defendant had failed to appear for three state court hearings concerning state court charges filed against him.  <u>Id</u>. at 285.  By the time defendant failed to appear a third time, the federal investigation against him had already commenced.  <u>Id</u>.  Based on these facts, the Third Circuit determined that defendant had actually obstructed the state court proceedings by failing to appear, and that the obstructive conduct occurred after the federal investigation commenced.  <u>Id</u>. at 287-88.  The Court ruled, however, that to qualify for a U.S.S.G. § 3C1.1 obstruction of justice enhancement, "there must be a nexus between the defendant's conduct and the investigation, prosecution, or sentencing of the federal offense."  <u>Id</u>. at 291.  Finding that defendant's failure to appear at the state court proceedings had no effect on the federal investigation, the Court determined the defendant was not subject to a two-level enhancement.  <u>Id</u>.

To the extent <u>Jenkins</u> requires actual proof that the obstructive conduct

affected the federal investigation, we find this requirement does not apply to cases in which the defendant engaged in a failed attempt to obstruct justice that, if successfully completed, would have had an effect on the federal investigation.  In Jenkins, the court was concerned with a defendant who actually succeeded in obstructing justice at the state level.  Nowhere did the court extend its requirement that such obstructive conduct have a nexus with federal investigation to those instances where the defendant attempted to obstruct justice but failed.

A good reason exists for this omission.  U.S.S.G. § 3C1.1 applies equally to defendants who actually obstruct justice and to those who attempt to obstruct justice but are not successful.  The enhancement recognizes that "a defendant who commits a crime and then . . . [makes] an unlawful attempt to avoid responsibility is more threatening to society and less deserving of leniency than a defendant who does not so defy the criminal justice process."  United States v. Emery, 991 F.2d 907, 912 (1st Cir. 1993).  An attempt, by its very nature, means the defendant tried to obstruct justice but failed.  If he had succeeded, then it would no longer be considered an attempted obstruction of justice, but rather would qualify as an actual obstruction of justice.  If Jenkins' nexus requirement applied to attempted obstructions of justice, it would be difficult, perhaps impossible, to offer actual evidence that a failed attempt to obstruct justice in a state prosecution nevertheless

had an actual effect on a federal investigation.  Failure to meet this burden would result in courts rewarding defendants for failing to complete conduct that, if successful, would have merited a two-level obstruction of justice enhancement. Such a result would undermine the rationale in which the obstruction-of-justice enhancement is based - punishment of those individuals who attempt to thwart the criminal justice system.  Imposing such a difficult burden on the government would effectively write out "attempted to obstruct" from U.S.S.G. § 3C1.1, in violation of Congress' explicit mandate.

Such an undermining of U.S.S.G. § 3C1.1's rationale and Congress' intent would exist if we applied <u>Jenkins</u> to this case and required the government to show an actual effect on the federal investigation.  Here, the defendant attempted to flee to Canada.  Certainly, if he had been successful, it would have been very difficult to find and then return defendant from a foreign country.  In that sense, defendant's escape to Canada would have satisfied <u>Jenkins</u>' nexus requirement because it surely would have had a significant impact on the federal investigation. Defendant's attempt was not successful, however, because the authorities arrested him at the border, which also means that his conduct was not able to have an actual effect on the state prosecution or the federal investigation.  Therefore, it is impossible for the government to satisfy <u>Jenkins</u>' nexus requirement.

Nevertheless, we find that simply because the defendant failed to complete an obstruction of justice that would have had a deleterious effect on a federal investigation does not excuse him from a two-level enhancement.  To hold otherwise, would deny U.S.S.G. § 3C1.1 from having equal reach to both attempts and actual obstructions of justice and would undermine the section's purpose.

Therefore, we adopt the presentence report's two-level enhancement for defendant's obstruction of justice added in paragraphs 35, 42, 49, 55, 61, and 67.

### F.  Acceptance of Responsibility

The probation office did not grant defendant a reduction for acceptance of responsibility.  Defendant objects to this omission, and argues that he is entitled to a three-level reduction under U.S.S.G. § 3E1.1.  Defendant asserts that he timely entered into a plea agreement with the government, that shortly thereafter he drafted a letter admitting to the conduct comprising the offense, that he has been truthful throughout this process, and that he has been readily available and willing to further assist the government in their investigation.  The probation office refutes defendant's position and argues that defendant's letter was sent much later than suggested, and that defendant has falsely denied sexually assaulting his sons prior to the age of sixteen.

In considering whether defendant is entitled to a reduction for acceptance of

responsibility, the court may consider whether the defendant "truthfully [admitted] the conduct comprising the offense[s] of conviction." U.S.S.G. § 3E1.1 cmt.1(a). While defendant is not required to affirmatively admit to relevant conduct beyond the offense of conviction, "a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility." Id. The court may consider the timeliness of the acceptance of responsibility. Id. at cmt(1)(h).

We do agree with defendant that he was not unduly tardy in accepting guilt. He immediately entered into a conditional plea agreement as early as November 2004, almost two years prior to the filing of the one-count information. The allegedly tardy letter accepting guilt was late in reaching the probation office apparently because defense counsel failed to send it timely, which we find to be harmless error. We accept as true that defendant drafted the letter in October 2006, about one month after he was charged.

Nevertheless, we find defendant is not entitled to a reduction for acceptance of responsibility because he has frivolously contested the age of his sons at the time of the relevant videotaping. As discussed above, the dates on several videos clearly establish that Mark Jr. and Bruce were under the age of sixteen during the offense. In his written objections, however, defendant argued that there was no

27

evidence whatsoever that any of his three sons, including Mark Jr. and Bruce, were under the age of sixteen.  Given the clear dates on the videos and the consistent testimony provided by the victims, defendant's initial challenge to the age of all the children amounts to a frivolous contesting of relevant conduct and therefore counsels against awarding defendant a three-level reduction for acceptance of responsibility.  Defendant's later attempt to withdraw some of these objections during the sentencing hearing does not erase the fact that his initial frivolous contest of their ages was inconsistent with the notion of accepting responsibility.[7]

For the reasons above, we adopt in full the findings of the presentence report.  Defendant's total offense level is forty-one, and his criminal history category is a I.  On this basis, the Sentencing Guidelines establish an advisory sentencing range of 324 to 405 months.  However, because the maximum sentence under 18 U.S.C. § 2251(b) is twenty years, the advisory sentence under the

---

[7] We recognize that the guidelines indicate that an obstruction-of-justice enhancement "ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct."  U.S.S.G. § 3E1.1 cmt..4.  Although defendant's attempt to flee the country in June 2004 results in an obstruction-of-justice enhancement, we do not find that conduct has any bearing on whether defendant accepted responsibility relevant to the federal prosecution.  That conduct occurred several months prior to defendant's entry into the conditional plea agreement, and more than two years prior to the filing of the one-count information against him.

Sentencing Guidelines is 240 months.  Pursuant to U.S.S.G. § 5G1.3(b), the

sentence imposed by the court must run concurrently with the undischarged term of

imprisonment defendant is serving at the state level, a term which he has been

serving since May 15, 2004.  Therefore, defendant is entitled to a thirty-four month

reduction in his sentence that results in a total recommended sentence of 206

months.

### IV. 18 U.S.C. § 3553(a) Factors

Before arriving at the appropriate sentence, we must consider the sentencing

factors enumerated under 18 U.S.C. § 3553(a).  At the sentencing hearing, we

heard arguments from both the prosecution and defendant regarding these factors,

in addition to receiving defendant's allocution.  Defendant argues that given his

background and age, he should be sentenced to the statutory minimum of ten years.


After considering these arguments and the relevant sentencing factors, we

find a concurrent 206-month sentence to be sufficient, but not greater than

necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2).  In

making this determination, we have considered all seven factors set forth in 18

U.S.C. § 3553(a).  Recognizing that the guidelines and policy statements and

amendments to the same referenced in 18 U.S.C. § 3553(a)(4) and (5) are advisory

only, we find their application in this case reasonable under the totality of the

circumstances.  In particular, we note that the advisory sentencing guideline range

of 324 to 405 months is much higher than the statutory maximum of 240 months

(minus the time already served at the state level).  Considering this disparity

coupled with the especially egregious nature of defendant's crime, a sentence

lower than the statutory maximum would not adequately reflect the seriousness of

the offense, promote respect for the law, or provide just punishment for the offense

in accordance with 18 U.S.C. § 3553(a)(2)(A).  The statutory maximum is also

necessary to provide further deterrence of such similar crimes.  See 18 U.S.C. §

3553(a)(2)(B).  We do not find that defendant's background or age counsels a

lower sentence than that provided by the advisory guidelines.


            s/ James F. McClure, Jr.
James F. McClure, Jr.
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,  :
                                   :         CRIMINAL NO. 4:06-CR-00295
        v.                  :
                                   :         (Judge McClure)
MARK DENSBERGER         :

**O R D E R**

April 11, 2007

For the reasons set forth in the foregoing memorandum,

**IT IS ORDERED THAT**:

1.     The presentence report is adopted in full and all of defendant's

objections are overruled.

2.     Defendant Mark Densberger's total offense level is 41 with a criminal

history category of I under the United States Sentencing Guidelines.

3.     Based on the statutory maximum of 20 years under 18 U.S.C. §

2251(b) (2002), and because defendant is entitled to a thirty-four

month reduction for time served on Northumberland County NO. CR-

04-643, his advisory guideline sentence is 206 months of

imprisonment, to be served concurrently with the state's sentence.

4.      After considering the sentencing factors under 18 U.S.C. § 3553(a),

the court will impose the advisory guideline sentence.


　　　　　　　　　　　　　　　　　　__  s/ James F. McClure, Jr._____
　　　　　　　　　　　　　　　　　　James F. McClure, Jr.
　　　　　　　　　　　　　　　　　　United States District Judge